# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KEVIN MCWILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14 C 3902 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| CITY OF CHICAGO, SCOTT J. CELANI, ) | |
| JAMES TUCKER, and DAWN HUBBARD, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kevin McWilliams brings this lawsuit against defendants the City of Chicago and defendants Scott J. Celani, James Tucker, and Dawn Hubbard (the "Defendant Officers"), alleging claims of evidence fabrication under § 1983[1] and malicious prosecution. Before the Court is defendants' motion for summary judgment [106]. For the reasons set forth below, defendants' motion is granted.

## FACTS

On the evening of February 21, 2013, while sitting in a car parked on the street in the 6400 block of South Eggleston Avenue in Chicago, Illinois, the Defendant Officers approached plaintiff, directed him to exit his vehicle, and subjected him to a custodial search. During the search, the Defendant Officers recovered two pairs of brass knuckles, which are illegal in Illinois. 720 ILCS 5/24-1(a)(1). Under Illinois law, possession of brass knuckles is generally a misdemeanor, 720 ILCS 5/24-1(b), but the offense is a felony for any person who has been previously convicted of a felony. 720 ILCS 5/24-1.1(a), (e). Plaintiff admits to having had two pairs of brass knuckles on his person on February 21, 2013, and to having been previously convicted of a felony.

Defendant Celani completed a form stating in part that plaintiff was seated in a vehicle parked 3-4 feet from the curb and that he had brass knuckles in his lap. The Cook County State's Attorney's Office ("CCSAO") approved charges against plaintiff, two counts of unlawful possession of a weapon by a felon (one for each pair of brass knuckles). Defendant Celani signed

---

[1] Plaintiff says he is pursuing his § 1983 fabrication of evidence claim under the Fourth Amendment for unlawful pre-trial detention. Since the filing of plaintiff's second amended complaint, the Supreme Court held that claims of unlawful pretrial detention, including claims of pretrial detention based on fabricated evidence, are covered by the Fourth Amendment. *Manuel v. City of Joliet (Manuel I)*, 137 S. Ct. 911 (2017); *see also Lewis v. City of Chi.*, 914 F.3d 472, 479 (7th Cir. 2019) ("The injury of wrongful pretrial detention may be remedied under § 1983 as a violation of the Fourth Amendment, not the Due Process Clause.").

a criminal complaint. A traffic ticket for improper parallel parking was also issued to plaintiff. The traffic ticket included a unique identifier of "TB 650-057," date, time and location of issuance, offense listing, and the signature and unique star number for Defendant Celani.

Plaintiff spent the night of February 21, 2013 in jail. The following day, on February 22, 2013, plaintiff attended a bond hearing and was released from custody after posting $500 bond. During the bond hearing, the prosecutor stated that it was a brass knuckles case.

On February 28, 2013, plaintiff attended a hearing for his criminal case. During the hearing, Defendant Celani testified, and Defendant Tucker's name was identified as an arresting officer. Plaintiff's traffic ticket was nonsuited during the hearing.

On July 16, 2013, plaintiff attended a status hearing where a judge modified his bond requirements by imposing additional conditions on plaintiff, including a curfew requiring plaintiff to stay at home from 7 p.m. until 7 a.m. On September 17, 2013, plaintiff attended another status hearing where Pretrial Services advised the court that plaintiff had not complied with the curfew (he was not in his apartment on five separate occasions in August and September). The criminal-court judge increased plaintiff's bond from $5,000 to $100,000. Plaintiff was not able to post bond and was remanded to the Cook County Department of Corrections to await trial in his criminal case.

A hearing on plaintiff's motion to quash arrest and suppress evidence was held on February 11, 2014. During the hearing, plaintiff testified that he was sitting in the driver's seat of a legally parked car when an unmarked police car drove the wrong way down a one-way street and stopped next to his car. Plaintiff testified that he was playing a game on his cell phone and did not have brass knuckles on his lap. According to plaintiff, officers approached the car, told him to get out of the car, searched him, and found brass knuckles in his coat pocket. Plaintiff admitted having brass knuckles on his person, testifying that he had one in each of his coat pockets. He said they were not visible when the officers approached the car. Defendant Celani testified during the hearing, stating that the arresting officers had recovered two pairs of brass knuckles from plaintiff's person. He identified Defendant Tucker and Defendant Hubbard as the co-arresting officers for plaintiff's underlying arrest. The state court judge granted the motion to quash arrest and suppress evidence. On February 14, 2014, the Cook County State's Attorney's Office dismissed the unlawful use of a weapon charges against plaintiff pursuant to *nolle prosequi*.

On May 28, 2014, plaintiff submitted his original complaint in this matter, along with an application to proceed *in forma pauperis*. He named the City of Chicago and the Chicago Police Department as defendants in his complaint. On July 17, 2014, the Court denied plaintiff's IFP application. On September 15, 2014, the Court granted plaintiff's second motion for leave to proceed *in forma pauperis*, finding that, pursuant to 42 U.S.C. § 1915(A), plaintiff had pled plausible claims for false arrest and malicious prosecution, and his complaint was filed. On March 13, 2015, Defendant City of Chicago and Defendant Chicago Police Department were served. On April 10, 2015, attorneys for the City of Chicago filed appearances. On June 3, 2015, the Court dismissed the matter for want of prosecution. The case was reinstated on September 8, 2015.

On September 28, 2015, a Freedom of Information Act ("FOIA") response regarding the underlying arrest was sent to plaintiff's sister, Bianca Armstead. Included in the FOIA response was information identifying all three Defendant Officers by name and star. During the September 30, 2015 status hearing, plaintiff was advised to serve interrogatories to Defendants City of Chicago and the Chicago Police Department.

On October 26, 2015, plaintiff filed a motion of addendum where he identified the following defendants for the first time: Cook County Sheriff Thomas J. Dart, Unknown Case Prosecutors for Criminal Case #9018284, Officer Scott J. Celani Star #3733, Officer Tucker Star #5542, Officer Hubbard Star #6062, and Circuit Court of Cook County Judge William Gamboney. On November 2, 2015, the Court denied plaintiff's motion and noted that, if plaintiff wanted to amend his complaint, he would need to file a new complaint that stood on its own. The Court also denied plaintiff's motion for a court-appointed attorney. On November 10, 2015, the City propounded to plaintiff its Initial Rule 26(a) Disclosure Statement and thirty-five pages of CPD records regarding the arrest.

On January 29, 2016, plaintiff, through recruited counsel, filed his First Amended Complaint and summonses were issued. The Defendant Officers were served in February 2016.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *See Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013). It is well settled that at the summary judgment stage, the court does not make credibility determinations, weigh evidence, or decide which inferences to draw from the facts; those are jury functions. *See Gibbs v. Lomas*, 755 F.3d 529, 536 (7th Cir. 2014).

## ANALYSIS

### I. Whether plaintiff's claims are time-barred

Defendants first challenge the timeliness of plaintiff's claims. The Court will evaluate each claim in turn.

### A. Pretrial wrongful detention claim based on evidence fabrication under the Fourth Amendment and § 1983

The parties agree that there is a two-year statute of limitations period for this claim. *See Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016) ("The statute of limitations for § 1983 claims in Illinois is two years."). The parties also agree that plaintiff's § 1983 claim accrued when his detention ended. *See Manuel v. City of Joliet* ("*Manuel II*"), 903 F.3d 667, 669 (7th Cir. 2018) (an individual's Fourth Amendment claim for wrongful pretrial detention accrues when the detention ends). But the parties disagree as to when, exactly, plaintiff's detention ended. Defendants say that this claim accrued when plaintiff was released on bond (on February 22, 2013) and, therefore, is time-barred because he did not name the individual officers as defendants by February 22, 2015. Plaintiff counters that this claim accrued when he was released from custody (on February 14, 2014) and, therefore, is timely because he named the individual officers as defendants in his amended complaint on January 29, 2016.

The Court previously addressed this issue when it ruled on defendants' motion to dismiss. (*See* dkt. 99.) In denying defendants' motion to dismiss on the basis of timeliness, the Court noted that defendants have the burden to establish that plaintiff's claim is time-barred and that the Seventh Circuit had recently held that the accrual date for a Fourth Amendment claim involving wrongful detention without probable cause accrues on the day the individual is released from custody. (*Id.* at 4-5.) The Court further noted that, while plaintiff did not plead precisely when he was released from custody, his allegations were sufficient, at that stage, to survive dismissal. (*Id.* at 5.)

At this stage of the proceedings, the Court has more evidence before it, particularly the conditions of plaintiff's bond and the events leading up to plaintiff being remanded to the Jail. In particular, plaintiff spent one night in Jail and was released on bond. It is unclear what the conditions of plaintiff's bond were at that point, except that he was released on February 22, 2013 after posting a $500 bond. Approximately five months later, the criminal court judge imposed a curfew on plaintiff. Two months later, the criminal court judge imposed more restrictions by increasing plaintiff's bond from $5,000 to $100,000. Plaintiff was unable to post his new bond and was remanded to the Jail where he spent nearly five months in pretrial custody.

Defendants say that plaintiff was only detained for one day and that his second detention was only the result of his failure to comply with his pretrial requirements. They say that plaintiff was free on bond for seven months and he could have filed a lawsuit during that time. Defendants further say that plaintiff's failure to timely file suit cannot be cured by his own misconduct with pretrial services.

Plaintiff responds that he was not incarcerated only because he failed to comply with pretrial service requirements but also because he had been charged with felony possession of a firearm. He says that his cause of action accrued when he was released from custody on February 14, 2014, not when he was temporarily released on bond.

"[A] claim for unlawful pretrial detention accrues when the detention ceases." *Mitchell v. City of Elgin*, 912 F.3d 1012, 1015 (7th Cir. 2019) (citing *Manuel II)*, 903 F.3d 667, 670 (7th Cir.

2018)). The issue here is *when* plaintiff's detention ceased. If it ceased when plaintiff was released on bond, then his claim is not timely. If, however, it ceased when he was released from Jail, then his claim is timely. This issue has not been squarely resolved. In *Mitchell*, the Seventh Circuit determined that "pretrial release might be construed as a "seizure" for Fourth Amendment purposes if the conditions of that release impose *significant* restrictions on liberty," but the court went on to say that it had "misgivings about construing a simple obligation to appear in court—a uniform condition of any pretrial release—as a 'seizure' for Fourth Amendment purposes." *Id.* at 1016 (emphasis added). Ultimately, the court declined to decide the issue because the record did not contain sufficient information about the plaintiff's conditions of release. *Id.* at 1017 ("Whether pretrial-release conditions satisfy that standard—and if so, which ones—will have to be resolved in this circuit in the wake of *Manuel I* and *II*."). Since this ruling, courts with more robust records have come to different conclusions. Some courts have found that an individual released on bond with minimal restrictions is not seized for purposes of the Fourth Amendment. *See Smith v. City of Chi.*, No. 18 C 4918, 2019 WL 4242503 (N.D. Ill. Sept. 6, 2019) (appeal pending) (requiring an individual to attend monthly court hearings and ask for permission to travel outside of the state does not constitute a Fourth Amendment seizure). Other courts have found that these minimal requirements do constitute a seizure. *See Switzer v. Vill. of Glasford, Ill.*, No. 18 C 1421, 2019 WL 3291519, at *4-5 (C.D. Ill. July 22, 2019) (plaintiff's claim did not accrue with his "pretrial release on bond" because the conditions of release constituted "a significant restriction on liberty" and the Supreme Court had held in a similar context that "the statute of limitations for a fabricated-evidence claim does not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor" (citing *McDonough v. Smith*, 139 S. Ct. 2149 (June 20, 2019)).[2]

On this record, the Court finds that plaintiff's claim is timely. While plaintiff initially had minimal bond requirements imposed on him, the requirements placed on him became more restrictive, his bond was later revoked, and he was then detained at the Jail for five months until the CCSAO *nolled* the charges against him. Although plaintiff did not comply with his bond requirements and therefore bears some responsibility for his five-month pretrial detention at the Jail, he ultimately would not have spent the five months in the Jail had it not been for the allegedly unlawful stop and search and fabricated evidence. Because plaintiff's detention ended on February 14, 2014 and he filed his amended complaint naming the Defendant Officers within the two-year statue of limitations on January 29, 2016, the Court finds this claim to be timely.

---

[2] The Supreme Court noted that the Second Circuit treated the plaintiff's fabrication of evidence claim "as one sounding in Due Process" and arising under the Due Process Clause. *McDonough*, 139 S. Ct. at 2155, n 2.

### B. Malicious Prosecution Claim

The parties agree that plaintiff's state law malicious prosecution claim was not filed within the one-year statute of limitations[3] but disagree as to whether the claim can be saved under Rule 15(c) or equitable tolling.[4] Defendants say the claim cannot be saved whereas plaintiff says it can.

*Notice*

Federal Rule of Civil Procedure 15(c) governs when an amended pleading "relates back" to the date of a timely filed original pleading and is therefore timely even though it was filed outside the applicable statute of limitations. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 541 (2010). Rule 15(c)(1)(C) provides that an amended complaint relates back to the original complaint when

> the amendment changes the party or the naming of the party against whom a claim is asserted" and is "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C). After *Krupski*,

> The 'only two inquiries that the district court is now permitted to make in deciding whether an amended complaint relates back to the date of the original one are, first, whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant; and second, whether even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself.

*Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559-560 (7th Cir. 2011).

Defendants say plaintiff cannot prove that the Defendant Officers knew or should have known prior to the expiration of the statute of limitations that they would be named as a defendant

---

[3] As discussed in this court's previous order (dkt. 99 at 5-6), plaintiff's state law malicious prosecution claim accrued on February 14, 2014, and the limitations period closed on February 14, 2015.

[4] Defendants also argue that plaintiff's state law malicious prosecution claim cannot be saved through equitable estoppel. Plaintiff did not respond to this argument and has therefore waived it. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("[f]ailure to respond to an argument . . . results in waiver.").

in this action. Defendants also say that plaintiff's delay in naming the Defendant Officers significantly impaired their abilities to defend themselves.

To survive summary judgment, plaintiff must submit some evidence showing that the Defendant Officers had notice of the lawsuit within the Rule 4(m) timeframe. *Pugh v. City of Chi.*, No. 08 C 7317, 2010 WL 4931015, at *2 (N.D. Ill. Nov. 29, 2010). Plaintiff submits that he named the City of City and the Chicago Police Department as defendants and that he complained about an "arresting officer" in the body of his initial complaint. Plaintiff also says that the Defendant Officers had been named in other lawsuits arising out of their employment with the City and that it would therefore be reasonable to conclude that attorneys for the City would have contacted the Defendant Officers to discuss the lawsuit when the original lawsuit was filed. This is not enough to show that the Defendant Officers would have known of the original action within the applicable time period. *See id.* at *2-3 (notice requirement not met simply by fact that a police officer and the City of Chicago were represented by attorneys for the City of Chicago); *see also Mosely v. Bd. of Educ. of City of Chi.*, No. 03 C 4915, 2009 WL 2448608 (N.D. Ill. Aug. 5, 2009) (same). Without more, the Court finds that plaintiff has not met the notice requirements under Rule 15(c)(1)(C) to establish relation back.[5]

*Equitable Tolling*

"The doctrine of equitable tolling permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before, even though the defendant took no active steps to prevent him from suing." *Donald v. Cook Cty. Sheriff's Dep't.*, 95 F.3d 548, 561-562 (7th Cir. 1996) (internal quotations and citation omitted). The doctrine requires plaintiff to demonstrate "reasonable diligence." *Id.* (internal citation omitted).

Defendants argue that equitable tolling fails because plaintiff was on notice and aware of the Defendant Officers' identities through various pieces of information, including his criminal complaint, traffic ticket, public defender, arrest report information in the public criminal court file, testimony at the February 28, 2013 hearing, testimony at the February 11, 2014 hearing, FOIA, and the City of Chicago's Rule 26(a) disclosures.

Plaintiff responds that, based on a mistake or misunderstanding of the process, he was unable to determine the identity of the Defendant Officers until shortly before he filed an addendum to his *pro se* complaint. He further says that equitable tolling applies because the facts here are nearly identical to the facts in *Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548 (7th Cir. 1996). The Court agrees that the facts in this case are similar to those in *Donald* and that equitable tolling is warranted here.

The record shows that there were many delays in this case, several of which were not attributable to plaintiff, and that plaintiff acted with reasonable diligence to pursue his claims. On

---

[5] Because plaintiff has not satisfied the first step of the analysis, the Court need not consider whether the Defendant Officers suffered any prejudice. *See Ryan v. City of Chi.*, No. 15 C 9762, 2018 WL 3586232, at *2 (N.D. Ill. July 26, 2018).

May 28, 2014, plaintiff filed his original *pro se* complaint as well as an application to proceed *in forma pauperis* ("IFP").[6] On July 17, 2014, the Court denied plaintiff's IFP application. On September 15, 2014, the Court granted plaintiff IFP status. The Court also determined that plaintiff had stated a plausible claim, and plaintiff's complaint was filed with the Court that same day. While there were some issues with service, on March 13, 2015, the Chicago Police Department waived service, and, on April 10, 2015, attorneys filed Appearances for the City of Chicago.

A status hearing was held on May 13, 2015. Plaintiff failed to appear, and the Court issued an order warning plaintiff that failure to appear at the next status hearing would result in dismissal of the case for want of prosecution. Plaintiff failed to appear at the next status hearing, and the case was dismissed. On August 19, 2015, plaintiff filed a motion to reinstate the case, which the Court granted on September 8, 2015.

A status hearing was held on September 30, 2015 where the Court ordered plaintiff to serve interrogatories to defendants by October 28, 2015. On October 26, 2015, plaintiff filed a motion of addendum seeking to add several individuals, including the Defendant Officers, as defendants. He also filed a motion for service of attorney. On November 2, 2015, the Court denied both motions, directed the Clerk to mail plaintiff a motion for attorney representation form, and advised plaintiff that he must submit an entirely new complaint if he sought to amend his complaint.

On November 5, 2015, a status hearing was held where the Court ordered the parties to serve their Rule 26(a)(1) disclosures by November 19, 2015 and ordered plaintiff to file an amended complaint by November 30, 2015. Plaintiff filed an amended complaint on November 30, 2015, where he named new individual defendants, including the Defendant Officers. On December 2, 2015, the Court recruited counsel for plaintiff, who subsequently filed an Appearance as well as a motion for extension of time to file an amended complaint, which was granted. In January 2016, plaintiff, through counsel, filed an amended complaint, and summons was issued to the Defendant Officers. On February 29, 2016, summonses were returned as executed. On March 4, 2016, an attorney for the City of Chicago filed an Appearance on behalf of the Defendant Officers.

Given that plaintiff named the City of Chicago and the Chicago Police Department and also discussed an "arresting officer" in his original complaint, that plaintiff complied with the Court's orders when he was out of custody (he filed a renewed IFP application and filed an amended complaint), that plaintiff filed a motion to re-instate the case, that plaintiff filed (after his first appearance in court) an addendum naming the Defendant Officers, and that plaintiff filed an amended complaint naming the Defendant Officers, the Court finds that equitable tolling is warranted here.

---

[6] When a *pro se* plaintiff seeks IFP status, the Court must determine whether the plaintiff is indigent and must also conduct an initial review of the complaint. *See* 28 U.S.C. §1915(a)(1); 28 U.S.C. §1915(e)(2)(B)(i)-(iii).

## II. Fourth Amendment Pretrial Detention Claim

Plaintiff is pursuing his § 1983 fabrication of evidence claim under the Fourth Amendment for unlawful pre-trial detention. He alleges that the Defendant Officers fabricated evidence to justify an illegal stop and search, and that the Defendant Officers used the fabricated evidence to file criminal charges against plaintiff so that plaintiff could be incarcerated and deprived of his liberty.

"To bring a claim for violation of the Fourth Amendment per *Manuel*, courts have set forth the following elements: 'the defendant[s] (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.'" *Williams v. City of Chi.*, 315 F. Supp. 3d 1060, 1070 (N.D. Ill. June 1, 2018) (citations omitted). The Fourth Amendment to the Constitution protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. Amend IV. "A seizure, including pretrial detention, is reasonable only if based on probable cause to believe the detainee has committed a crime." *Young v. City of Chi.*, No. 17 C 4803, 2019 WL 6349892, at *4 (N.D. Ill. Nov. 27, 2019) (citation omitted). Probable cause is an absolute bar to plaintiff's claim under the Fourth Amendment." *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006). "Probable cause exists if 'at the time of the arrest, the facts and circumstances within the office's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Williams v. City of Chi.*, 733 F.3d 749, 756 (7th Cir. 2013) (citations omitted). For purposes of federal law, probable cause exists "when the totality of the facts and circumstances within [the officers'] knowledge at the time of the arrest would warrant a reasonable person in believing the person has committed a crime." *Vaughn v. Chapman*, 662 F. App'x 464, 467 (7th Cir. 2016) (quoting *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015)). "A probable cause determination is an objective inquiry." *Murawski v. Reid*, 375 F. Supp. 3d 998, 1003 (N.D. Ill. April 12, 2019). "[T]he exclusionary rule does not apply in a civil suit under § 1983 against police officers." *Martin v. Marinez*, 934 F.3d 594, 599 (7th Cir. 2019).

Defendants argue that they are entitled to summary judgment on this claim. According to the Defendant Officers, even assuming that plaintiff was legally parked, they had the authority to approach plaintiff's vehicle to conduct a field interview and/or investigatory stop and observe any individuals or items in plaintiff's car, and it is undisputed that plaintiff had a prior felony conviction and was in possession of illegal brass knuckles. Based on the totality of the circumstances, defendants say that the Defendant Officers had probable cause to charge plaintiff with UUW by Felon.

Defendants ignore the genuine dispute between the parties as to whether their initial search of plaintiff was proper: the Defendant Officers claim that plaintiff was holding brass knuckles in plain view when the arresting officers approached his vehicle, whereas plaintiff maintains that he was holding nothing but a cell phone and the officers only saw the brass knuckles after they searched him illegally. But this dispute is not material because, regardless of whether the Defendant Officers had probable cause to search plaintiff in the first place, once they discovered the brass knuckles, they had probable cause to arrest plaintiff, which dooms his § 1983 claim. *See Martin*, 934 F.3d at 599 ("[T]he fact that the evidence was the fruit of an illegal detention does not

make it any less relevant to establishing probable cause for the arrest because the exclusionary rule does not apply in a civil suit under § 1983 against police officers."); *see also Hicks v. Cook Cty. Sheriff's Office*, No. 15 C 6852, 2020 WL 1322855, at *9 (N.D. Ill. Mar. 19, 2020) (even though the officers may not have had probable cause to initiate the traffic stop, the officers had probable cause to arrest the plaintiff after he told them that he did not have a valid driver's license); *Waterworth v. City of Joliet*, No. 17 C 4990, 2018 WL 2846393, at *3-4 (N.D. Ill. June 11, 2018) (same). Because the Defendant Officers had probable cause to arrest plaintiff for the brass knuckles, plaintiff cannot recover damages related to any pretrial detention that occurred after his arrest. Summary judgment is granted to defendants on this claim.

### III. Malicious Prosecution Claim

Defendants argue that plaintiff's malicious prosecution claim fails as a matter of law. To establish a claim of malicious prosecution under Illinois law, a plaintiff must show "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Swick v. Liautaud*, 169 Ill.2d 504, 512 (Ill. 1996). A plaintiff must establish each element in order to prevail. *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) ("All of these elements must be present; the absence of even one element will preclude recovery for malicious prosecution.").

Probable cause is a complete defense to malicious prosecution under state law. *Vaughn*, 662 F. App'x at 467. "This is so even where the defendant officers allegedly acted upon a malicious motive." *Mustafa*, 442 F.3d at 547. For a malicious prosecution claim under Illinois law, probable cause is determined by what the defendants knew at the time the charging document was filed, not at the time of the arrest. *Holland v. City of Chi.*, 643 F.3d 248, 254 (7th Cir. 2011). For purposes of this claim, probable cause "is defined as a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged. It is the state of mind of the person commencing the prosecution that is at issue — not the actual facts of the case or the guilt or the innocence of the accused." *Murawski*, 375 F. Supp. 3d at 1007 (citations omitted).

As previously discussed, probable cause existed at the time the charges against plaintiff were filed because plaintiff admitted that he had brass knuckles on his person; it is illegal for individuals with felony convictions to possess certain weapons, including brass knuckles; plaintiff admitted having two prior felony convictions; the Defendant Officers called the CCSAO Felony Review Division to approve felony charges; the CCSAO approved the charges; and, plaintiff was then charged with UUW by a felon. *Martin*, 934 F.3d at 599 ("[T]he existence of probable cause for the arrest would also bar recovery on a theory of malicious prosecution.").

Moreover, "a malicious prosecution action cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused." *Swick*, 169 Ill.2d at 512. "Only when a plaintiff establishes that the *nolle prosequi* was entered for reasons consistent with his innocence does the plaintiff meet his burden of proof. . . . Otherwise,

10

every time criminal charges are nol-prossed a civil malicious prosecution action could result." *Id*. at 513-514. In fact,

> The abandonment of the proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial.

*Id*. at 513.

Here, the *nolle prosequi* order was entered in the underlying criminal case shortly after the criminal court judge granted the motion to quash arrest and suppress evidence. Defendants contend that plaintiff cannot show that the criminal proceedings terminated in plaintiff's favor because the *nolle prosequi* order was entered due to the impossibility or impracticability of bringing plaintiff to trial. They say it would have been impossible to bring plaintiff to trial on a felony weapons charge, which requires admissibility of the physical weapon, without the brass knuckles. Defendants also say plaintiff admits that he is a convicted felon and that he was in possession of the brass knuckles. Plaintiff responds that the proceedings were terminated in his favor because the prosecutor could not proceed in a case where there was no admissible evidence.

"The burden of proof of a favorable termination . . . remains with the plaintiff." *Id*. at 513. "Only when a plaintiff establishes that the *nolle prosequi* was entered for reasons consistent with his innocence does the plaintiff meet his burden of proof." *Id*. Here, the evidence does not sufficiently show that the criminal proceedings were terminated in a manner indicative of plaintiff's innocence. Instead, the Court agrees that, in this context, it would have been impossible or impracticable for prosecutors to have continued to pursue the criminal charges against plaintiff after the motion to quash and suppress was granted and that the *nolle prosequi* order was entered for that reason, not because plaintiff was innocent of the UUW charges. *See Thompson v. City of Chi.*, 722 F.3d 963, 969 (7th Cir. 2013) (noting that, under Illinois law, a malicious prosecution claim requires proof that the criminal proceeding against the plaintiff concluded in manner indicative of the plaintiff's innocence); *Rosado v. Mora*, No. 17 C 2210, 2019 WL 4450523, at *6 (N.D. Ill. Sept. 17, 2019) ("Courts have repeatedly found that dismissal *nolle prosequi* does not indicate innocence when it follows suppression of evidence for reasons unrelated to reliability— especially prophylactic rules like . . . the Fourth Amendment's exclusionary rule.") (citing cases).

Because probable cause existed at the time of charge and because plaintiff has not shown that the underlying proceedings were terminated in his favor indicative of his innocence, defendants' motion for summary judgment as to this claim is granted.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is **granted**. Civil case terminated.

**SO ORDERED.** **ENTERED: March 31, 2020**

_____
**HON. JORGE ALONSO
United States District Judge**